# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| MICHEAL LEAL, an individual, | CASE NO.: |
| *Plaintiff,* | |
| | JUDGE: |
| v. | |
| FELICIA BEDEL, an individual, | |
| and | |
| | **COMPLAINT FOR LIBEL, FALSE LIGHT, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS, INVASION OF PRIVACY, BREACH OF CONSENT DECREE, AND CONSPIRACY** |
| CAMMIE LEAL, an individual, | |
| and | |
| CHELSEA STAEDTER, an individual, | |
| and | |
| SAMANTHA KERNS, a.k.a. SAMANTHA ADAMO, an individual | |
| *Defendants.* | |

NOW COMES Plaintiff Michael Leal ("Plaintiff"), by and through undersigned counsel, and for his Complaint against Defendants Felicia Bedel, Cammie Leal, Chelsea Staedter, and Samantha Kerns (collectively "Defendants") states as follows:

## PARTIES

1. Plaintiff Michael Leal is an individual residing in Stonybrook, New York. Plaintiff is an entrepreneur in the fitness and bodybuilding industry, as well as a former Army Ranger. Plaintiff predominantly marketed and promoted his business and bodybuilding career online via social media until the Defendants' actions, as described herein, forced him to distance himself from online platforms and largely terminate his business activities all together.

2. Defendant Felicia Bedel ("Bedel") is an individual residing in Cincinnati, Ohio. Bedel was in a romantic relationship with Plaintiff beginning in 2018 and married to Plaintiff from 2020 to 2021.

3. Defendant Cammie Leal ("Cammie") is an individual residing in Tolleson, Arizona. Cammie was previously married to Plaintiff from approximately 2016 until they were separated in 2018 and formally divorced in 2020.

4. Defendant Chelsea Staedter ("Staedter") is an individual residing in San Diego, California. Staedter was briefly in a romantic relationship with Plaintiff in 2020 while Plaintiff was in the process of filing for dissolution from his marriage to Bedel. Staedter also has a career and substantial online presence in the fitness and bodybuilding industry.

5. Defendant Samantha Kerns ("Kerns") is an individual residing in Kathleen, Georgia. Kerns is a self-proclaimed "revenge coach" and subject-matter expert on narcissistic behavior. Kerns promotes "revenge coach" and life-coaching services on social media websites, primarily on TikTok and Instagram, through the usernames @whatdoesitmatter, @whatdoesitmatternow, @mrssamanthaanne, and @iamsam.xo. Kerns' revenge coaching services are one of her primary sources of revenue. Kerns had no personal relationship with the Plaintiff prior to orchestrating and inciting the harassment described herein.

## JURISDICTION AND VENUE

6. This Court possesses federal diversity jurisdiction under 28 U.S.C. § 1332 as the parties are diverse in citizenship and the amount in controversy exceeds $75,000.

7. Venue is proper in the District Court for the Southern District of Ohio pursuant to 28 U.S.C. § 1391(b)(1).

**FACTUAL BACKGROUND**

8. Plaintiff has been the victim of extensive harassment, both online and off, due to the Defendants' concerted effort to ruin his reputation, financially cripple his business, and expose his confidential medical history. Each of the Defendants have defamed the Plaintiff and/or his business ventures and inflicted severe mental and emotional distress in retaliation for the termination of their respective romantic relationships with the Plaintiff. This unlawful campaign against the Plaintiff was led primarily by Defendant Kerns as a part of her "revenge coaching" business.

9. In 2016, Plaintiff married Defendant Cammie. Their relationship was tumultuous. Cammie had a history of domestic violence against Plaintiff and was arrested on at least one occasion for physically abusing the Plaintiff. Plaintiff never physically abused Cammie.

10. Plaintiff separated from Cammie in 2018 and they filed for dissolution of their marriage in Maricopa County, Arizona. Plaintiff and Cammie signed the dissolution order on January 8, 2020. The dissolution was finalized on January 16, 2020.

11. Upon Plaintiff's separation from Cammie, Cammie proceeded to publish false allegations that Plaintiff had committed acts of domestic violence against her on the Internet.

12. As part of the dissolution consent decree, both Plaintiff and Cammie agreed to and were bound by a non-disparagement order. The order states that neither Plaintiff nor Cammie would "disparage, defame, sully or compromise the goodwill, name, brand, or reputation of the former spouse or the former spouse's business in any manner and on any platform including, but not limited to, any social media platform." See Dissolution Consent Decree (the "Order"), attached hereto as Exhibit A.

13. The Order states that any party who fails to comply with the provision "shall reimburse the aggrieved party for court costs and attorney fees incurred by that party to force compliance with the section and is subject to appropriate legal sanctions including but not limited to a monetary penalty in an amount to be determined by the Court." Ex. A at 12.

14. As a result of the emotional toll of his relationship with Cammie, Plaintiff's mental and emotional health deteriorated. Plaintiff suffered from substance abuse as well as several other mental health issues.

15. While Plaintiff was formally separated from Cammie, he began dating Defendant Bedel in 2018. Plaintiff and Bedel were married after Plaintiff's dissolution from Cammie was finalized. Their relationship was also toxic and adversely affected by the aforementioned substance abuse issues, from which both Plaintiff and Bedel suffered, and their struggles to have children.

16. Plaintiff and Bedel decided to file for dissolution in 2020. Plaintiff and Bedel both filled out the relevant forms and documentation. Bedel advised Plaintiff that she would file the documents with the court but chose not to do so.

17. Bedel repeatedly made false abuse allegations against Plaintiff when their relationship was deteriorating. On more than one occasion, Bedel harmed herself and represented to Plaintiff and others that her injuries were a result of his abuse and falsely stated that she had filed police reports concerning the alleged abuse.

18. During his separation with Bedel, Plaintiff began dating Defendant Staedter. Their relationship was brief and largely amicable. Staedter worked in the bodybuilding industry and was attempting to start her own business, similar to that of Plaintiff's. Plaintiff provided Defendant Staedter with business advice and she promoted his business on numerous occasions.

19. Plaintiff ended his relationship with Staedter when he discovered that she had given him a sexually transmitted disease. Staedter admitted responsibility for transmitting the disease and apologized to Plaintiff. The end of their relationship was amicable, and Plaintiff continued to provide Staedter with business advice thereafter.

20. Later, Plaintiff and Bedel briefly attempted to reconcile their marriage. However, due to irreconcilable differences, they filed for dissolution in March 2021.

21. Upon information and belief, after Bedel and Plaintiff separated for the second time, Bedel retained Defendant Kerns for her "revenge coaching" services. Beginning in April 2021, Kerns began a social media campaign accusing the Plaintiff of numerous false and defamatory allegations to destroy Plaintiff's reputation and that of his business and to encourage others to harass Plaintiff as revenge for ending his relationship with Bedel.

22. At some point after Bedel retained Kerns, Defendants Cammie and Staedter also joined in the campaign to destroy the Plaintiff's reputation. Upon information and belief, the Defendants conspired to commit the tortious conduct described using the platform Discord, which allows users to securely create group chatrooms.

23. All of Kern's false and defamatory statements were published on TikTok and her Instagram accounts. Kerns published at least twenty-seven (27) videos that defame the Plaintiff and/or cast him in a false light before the public. Twenty-two of those videos are still published on her Instagram account @mrssamanthaanne at the following URL: https://www.instagram.com/mrssamanthaanne/.

24. For example, in one video Kerns stated "Cammie got arrested for hitting you because you attempted to hook up with a low grade prostitute and then you hit her back several times while your piece of shit friends just sat there and watched you. You can keep on with that

bullshit story but I have talked to hundreds of women who have been arrested because they were so mentally and emotionally abused that…they punched their spouse…And a lot of narcissists like to push their spouses to this point so that they can use it as manipulated evidence to support their story."

25. Defendants' conduct has directly incited others to harass the Plaintiff both online and offline. On at least one occasion, Kerns posted text messages on Instagram sent to her by an individual who took photographs of Plaintiff and an acquaintance in a restaurant and hosted a live video where she spoke with the individual on the phone as she was blatantly harassing Plaintiff in the restaurant. The individual attempted to buy alcoholic drinks to be sent to Plaintiff's table and to relay the message "Sam says hi." Plaintiff was abstaining from alcohol at the time in the interest of managing his substance abuse issues, and Defendants had knowledge of this fact. Kerns heavily insinuated in her video that Plaintiff was cheating on his girlfriend at the time with the acquaintance.

26. All Defendants additionally published false statements concerning Plaintiff's business and products, including that Plaintiff's products were unsafe for public consumption and had dangerous side effects. Defendant Staedter further instructed her followers to report Plaintiff's business to the FDA, despite Defendant Staedter selling an identical product herself.

27. During this time, Cammie made false allegations that Plaintiff had abused her during their marriage. Bedel additionally harassed Plaintiff on social media. For example, she published Plaintiff's personal phone number and birth certificate, and directing followers as well as one of his friends and directing followers to "have at them." As a result of that post, Plaintiff received numerous harassing text messages from anonymous individuals. Bedel additionally published banking information for his business, including account and routing numbers.

28. Additionally, Defendant Kerns published a screenshot of one of Plaintiff's Instagram posts which he had removed, in which he showed evidence of self-harm, and republished the post on her account and added the following text: "Team Leal fans!! Y'all gonna trust a mentally insane person to trust your bodies to?!? When he does this to himself?? Seems legit! Don't post and delete you weak pathetic excuse of a man!!!"

29. The false and disparaging statements are numerous and extensive. The substance of these statements includes the following:

   a. Plaintiff gave Defendants Bedel and/or Staedter a sexually transmitted disease.

   b. Plaintiff is sterile.

   c. Defendant Bedel filed police reports alleging she was abused by Plaintiff.

   d. Plaintiff abused Defendants Bedel and/or Cammie.

   e. Plaintiff did not provide Defendant Bedel with enough money to buy food and instead went on a trip to Miami, Florida to "blow off steam."

   f. Plaintiff fraudulently misrepresented that he suffers from a disability.

   g. Plaintiff committed tax fraud and was "fraudulently flipping funds"

   h. Plaintiff is a sociopath and a narcissist.

   i. Plaintiff is a "professional gaslighter."

   j. Plaintiff regularly cheats on and lies to his romantic partners.

   k. Plaintiff's fitness products cause severe side effects that have harmed customers' health.

   l. Plaintiff engages in unethical business practices.

30. Kerns at one point offered to stop harassing Plaintiff, stating: "I will help you repair your reputation. I am going to offer you the low low price of all the money that you took from

Cammie, the money that you owe Chelsea, and all the money that Felicia lost when you sold her a pipe dream. My methods of payment are cash and bitcoin."

31. Defendant Kerns unlawfully obtained the Plaintiff's medical records. Defendant Kerns published the details of Plaintiff's medical history using her Instagram account @mrssamanthaanne, stating: "[Plaintiff] was supposed to be committed in psych ward/hospital 4/6-4-9 but was released on the 8th". Defendant Kerns posted this information regarding Plaintiff's release from the hospital before Plaintiff was able to inform his family or loved ones of his release.

32. The aforementioned statements are hereinafter referred to as the "False Statements".

33. All of the False Statements are false, defamatory, and/or cast the Plaintiff in a false light before the public. Plaintiff did not physically or mentally abuse any of the Defendants and does not otherwise mistreat romantic partners in the serious manner described by Defendants. Plaintiff did not transmit any diseases to Defendants Bedel and Staedter. Defendant Bedel never filed police reports against Plaintiff and Plaintiff never left Bedel financially destitute. Plaintiff has a verified disability for which he receives financial assistance from the Veterans Administration. Plaintiff's products did not produce the severe side effects described by Defendants and did not engage in any unethical business practices.

34. Defendants' conduct has not only compelled individuals to stalk and harass Plaintiff, but also his friends, the women he dates, and his employers. On at least one occasion, Plaintiff was fired from a job because his employer was contacted directly by an anonymous individual repeating the Defendants' allegations and his employer terminated Plaintiff's position because the other employees were uncomfortable working with Plaintiff due to the False Statements.

35. Upon information and belief, Defendant Kerns has harassed and verbally abused others, including other military veterans, as part of her business as a 'revenge coach'.

36. When viewed together, the false and defamatory statements published by Defendants are disparaging, impugn Plaintiff's ethical conduct and reputation, and injuriously affect Plaintiff in his trade and profession.

37. Defendants published the false and defamatory statements about Plaintiff with actual malice, as Defendants knew, or showed reckless disregard for the truth, that the statements were false. Outside of the defamatory content described above, Defendants continued to repeat the defamatory statements about Plaintiff and have encouraged others to engage in harassing behavior.

38. The false and defamatory statements were published to harm Plaintiff's personal and professional reputation and to deter other individuals from doing business with him by asserting that Plaintiff engages in fraudulent and dangerous conduct, abuses women, spreads diseases, and is unethical.

39. Contrary to the false and defamatory statements, Plaintiff has established a reputation as an upstanding and principled bodybuilder and coach. Plaintiff has never committed any acts of domestic violence, and has never engaged in fraudulent or unethical business practices.

40. The false and defamatory statements were seen by family, friends, and business associates of Plaintiff. Plaintiff has been forced to expend significant time and resources towards defending his reputation from these false and defamatory statements.

41. As a direct and proximate result of the publication of the false and defamatory statements by Defendants, as well as the harassment sustained by Plaintiff at the hands of Defendants' followers, Plaintiff has been unable to retain meaningful employment. Plaintiff has

lost numerous clients whom Plaintiff previously trained, lost significant business opportunities, and has been told by other employers outside of the body building community that the harassment of Plaintiff made it impossible to employ Plaintiff.

42. As a direct and proximate result of the Defendants' malicious attacks on Plaintiff, Plaintiff sustained severe mental distress, fearing for his safety, and living in constant fear of further public harassment.  The harassment from Defendants and their followers has caused Plaintiff to have significant suicidal ideation, to the point where numerous wellness checks have been requested by Plaintiff's family and friends, and Plaintiff attempted suicide, was hospitalized, and is still currently being treated for the trauma he suffered.

43. Further, as a direct and proximate result of Defendants' conduct, Plaintiff has suffered significant financial harm and injury, including, but not limited to, a complete loss of revenue and sales, adverse business consequences, and other general damages detailed more fully below.

## COUNT I
### (Defamation – Libel and Libel Per Se)

44. Plaintiff incorporates and realleges every allegation set forth above as though fully set forth herein.

45. Defendants have intentionally published False Statements of and concerning the Plaintiff to third parties via the Defendants' respective social media accounts.

46. Defendants published the False Statements without privilege or authorization to do so.

47. The False Statements are false, impugn Plaintiffs' reputation and negatively affect Plaintiff in his trade and profession.

48. The False Statements are defamatory per se as it impugns the Plaintiff in his trade or profession and accuse him of a crime of moral turpitude, i.e. domestic violence.

49. Upon information and belief, Defendants published the False Statements with malice and knowledge that the statements contained therein were false or at least with reckless disregard as to the truth or falsity of the statements.

50. Plaintiff has suffered reputational harm, loss of revenue, mitigation expenses, mental anguish, distress, humiliation, and other injuries as a direct and proximate result of the false and defamatory statements published by Defendants.

51. Plaintiff has incurred damages as a direct and proximate result of the False Statements, and also as a result of repetition of the defamatory statements by third persons, such repetition being the natural consequence of Defendants' original publications and/or the express or implied authorization of such repetition.

52. As a direct and proximate result of the False Statements, Plaintiff has suffered significant reputational harm and sustained actual damages including mental anguish, loss of capital revenue, lost productivity, other expenses incurred, and loss of intangible assets in an amount exceeding $75,000.00, with the exact amount to be proven at trial.

53. Plaintiff additionally requests a permanent injunction against Defendants declaring that these allegations are false, defamatory, and that Defendants are prohibited from creating or publishing the same or similar defamatory statements about Plaintiff in the future.

## COUNT II
### (False Light)

54. Plaintiff incorporates and realleges every allegation set forth above as though fully set forth herein.

55. Defendants intentionally and maliciously published the False Statements which placed Plaintiff in a false light, as the False Statements implied that Plaintiff cheated on his former spouses, spread sexually transmitted diseases, and committed unethical business practices.

56. Defendants, by publishing the False Statements to the internet, placed Plaintiff before the public in a false light.

57. The false light in which the Plaintiff was placed would be highly offensive to a reasonable person.

58. By publishing the False Statements, the Defendants acted with knowledge that the statements were false and/or acted with reckless disregard as to the falsity of the statements and the false light in which the Plaintiff would be placed.

59. As a direct and proximate result of the false light with which Defendants have portrayed Plaintiff, Plaintiff has suffered significant reputational harm and sustained actual damages including mental anguish, loss of capital revenue, lost productivity, other expenses incurred, and loss of intangible assets in an amount exceeding $75,000.00, with the exact amount to be proven at trial.

### COUNT III
### (Intentional Infliction of Emotional Distress)

60. Plaintiff incorporates and realleges every allegation set forth above as though fully set forth herein.

61. Defendants conduct, including but not limited to inciting harassment, publication of the Plaintiff's medical information, and defamatory statements, was extreme and outrageous.

62. Defendants intended their conduct to cause the Plaintiff emotional distress or, at the very least, know or should have known that their harassment and statements online would result in the Plaintiff suffering severe emotional distress.

63. As a direct and proximate result of Defendants' extreme and outrageous conduct, Plaintiff has suffered significant reputational harm and sustained actual damages including mental anguish, loss of capital revenue, lost productivity, other expenses incurred, and loss of intangible assets in an amount exceeding $75,000.00, with the exact amount to be proven at trial.

## COUNT IV
### (Tortious Interference with Business Relationships)

64. Plaintiff incorporates and realleges every allegation set forth above as though fully set forth herein.

65. A business relationship existed between the Plaintiff and customers who purchased products from his former fitness business and/or prospective customers and employers.

66. The Defendants had knowledge of Plaintiff's business relationships with his customers and/or prospective customers and employers.

67. The Defendants intentionally induced customers and prospective customers and employers to not enter into business relationships with the Plaintiff.

68. As a direct and proximate result of Defendants' actions, Plaintiff has suffered special harm, actual damage, loss of business opportunities, loss of income, loss of revenue, loss to reputation, emotional distress, mental anguish, suffering and other harm because of Defendants' tortious conduct, the full amount of which will be proven at trial but amounts to at least $75,000.00, with the exact amount to be proven at trial.

## COUNT V
### (Invasion of Privacy – Public Disclosure of Private Facts – Defendant Kerns)

69. Plaintiff incorporates and realleges every allegation set forth above as though fully set forth herein.

70. Defendant Kerns publicly disclosed Plaintiff's confidential medical records detailing his struggles with mental health.

71. Plaintiff's medical records contained private facts of and concerning the Plaintiff's medical history and treatment.

72. Disclosure of private medical records, particularly those of mental health treatment, would be highly offensive and objectionable to a reasonable person of ordinary sensibilities.

73. Defendant Kerns intended to disclose Plaintiff's private medical records.

74. The Plaintiff's medical records were not of legitimate concern to the public.

75. Plaintiff has suffered significant reputational harm and sustained actual damages including mental anguish, loss of capital revenue, lost productivity, other expenses incurred, and loss of intangible assets in an amount exceeding $75,000.00, with the exact amount to be proven at trial.

## COUNT VI
### (Breach of Contract – Defendant Leal)

76. Plaintiff incorporates and realleges every allegation set forth above as though fully set forth herein.

77. On or about January 8, 2020, Plaintiff and Defendant Leal entered into a consent decree contract which effectively dissolved their marriage.

78. Contained within the consent decree was a non-disparagement clause, which, in part, prohibited either Plaintiff or Defendant Leal from making "any statements to disparage, defame, sully or compromise the goodwill, name, brand, or reputation" of one another.

79. Further, both parties acknowledged in the consent decree that no events of domestic violence occurred between one another during their relationship.

80. In April and May, 2021, Defendant Leal made disparaging and defamatory remarks about Plaintiff, including but not limited to accusing Plaintiff of domestic violence.

81. The consent decree states that a party in violation of the provision shall "reimburse the aggrieved party for court costs and attorneys fees incurred by that party to force compliance" with the non-disparagement clause.

82. As a direct and proximate result of Defendant Leal's breach of the consent decree, Plaintiff has sustained damages, including substantial attorneys fees, mental anguish, and emotional injury, in an amount in excess of $75,000.00, with the exact amount to be proven at trial.

## COUNT VII
### (Civil Conspiracy)

83. Plaintiff incorporates and realleges every allegation set forth above as though fully set forth herein.

84. Defendants entered into a malicious combination, the purpose of which was to cause tortious injury to the Plaintiff, specifically the tortious conduct listed above.

85. Defendants acted together to purposefully commit tortious conduct without a reasonable or lawful excuse, for the purpose of injuring the Plaintiff.

86. Defendants tortious conduct injured the Plaintiff, including but not limited to injury to his reputation, business relationships, ability to obtain gainful employment, and severe emotional distress and mental anguish.

87. Each of the unlawful acts described in Counts I through VI is actionable independent of the conspiracy itself.

## **PRAYER FOR RELIEF**

WHEREFORE, based on the foregoing, Plaintiff Michael Leal demands judgment in his favor and against Defendants Felicia Bedel, Cammie Leal, Chelsea Staedter, and Samantha Kerns on all counts, jointly and severally, as follows:

a. Issuance by this Court of an Order decreeing that the False Statements regarding Plaintiff are false and defamatory;

b. Injunctive relief that the Defendants are:

    i. prohibited from creating or publishing statements regarding Plaintiff which defame, disparage, or contain libelous statements regarding Plaintiff; and

    ii. ordered to take all actions necessary to remove all of the False Statements published from the Internet, including but not limited to, requesting removal of the False Statements from the Facebook pages of all Defendants and all groups Defendants are associated with;

c. Actual and/or compensatory damages in an amount to be proven at trial;

d. Pre- and post-litigation interest at the maximum rate provided by law;

e. Reasonable attorney's fees to the extent permitted by law;

f. Costs of this action; and

g. For any and all other relief as this Court may deem Plaintiff just and proper.

    Respectfully submitted,

    */s/ Andrew Stebbins*
    ANDREW C. STEBBINS (0086387)
      *astebbins@minclaw.com*
    CAROLINE R. FORD (0101360)
      *cford@minclaw.com*
    MINC LLC
    200 Park Ave, Suite 200
    Cleveland, Ohio 44122
    Phone: (216) 373-7706
    Fax: (440) 792-5327
    **Counsel for Plaintiff**