IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **MICHAEL LEAL**<br>    *Plaintiff,*<br>v.<br>**FELICIA BEDEL**, *et al.*<br>    *Defendants.* | Case No.: 1:22-cv-00150-MRB-KLL<br><br>Judge Michael R. Barrett<br><br>Magistrate Judge Karen L. Litkovitz |
| **DEFENDANT STAEDTER'S SPECIAL MOTION TO STRIKE** ||

Defendant Chelsea Staedter respectfully moves the Court to strike Plaintiff's claims against her. As laid out below, Ms. Staedter is entitled to invoke California's anti-SLAPP statute, California Code of Civil Procedure § 425.16, to dispose of Plaintiff's claims and recover her attorney's fees.

**ISSUES PRESENTED**

1. Federal courts sitting in diversity must apply the forum state's choice-of-law principles. Ohio chooses law on an issue-by-issue basis, asking whether State A has policy interests that give ground to apply its defenses to claims raised under State B's laws. California enacted anti-SLAPP legislation to counteract "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights."[1] Should the Court permit a California defendant to invoke that protection in Ohio?

2. A federal court may apply a state's procedural laws unless they cause a "direct collision" with the Federal Rules of Civil Procedure. Federal courts routinely enforce the motion-to-strike and fee-shifting provisions in California's anti-SLAPP law because they can be harmonized with Rules 12 and 56. Should the Court apply those provisions here?

3. California's anti-SLAPP law applies to any claim premised on any act in furtherance of the person's rights of petition or free speech in connection with a public issue. Plaintiff is seeking damages against Ms. Staedter based on alleged public statements about food and drug safety. Do Ms. Staedter's online statements about the safety of commercially available food and drugs further her right to speak freely on a public issue?

4. A plaintiff lacks standing to raise claims on behalf of a third party, even if those claims belong to a company of which he is the sole owner. Plaintiff is suing Ms. Staedter based on her alleged statements about his business. Must the Court dismiss the claims based on Plaintiff's lack of standing?

---

[1] Cal. Civ. Proc. Code § 425.16.

5. A federal court sitting in diversity may only exercise jurisdiction over an out-of-state defendant if the forum state's courts could also do so, and Ohio law requires minimum contacts with the state before asserting jurisdiction over a defendant. The Complaint admits that Ms. Staedter is a California resident, and it does not allege that she had any contact with Ohio whatsoever. May Ohio courts haul her across the country to defend herself here?

6. The First Amendment requires that complaints based on allegedly false speech must contain well-pleaded allegations establishing the defendant's liability. Plaintiff's Complaint alleges that Ms. Staedter encouraged her followers to report his business's products to the FDA, but it does not plausibly allege that that statement asserts any facts or that it was made with actual malice. May the Court premise liability on Ms. Staedter's statement of First Amendment-protected opinion?

7. State tort laws are preempted when they pose an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. Plaintiff seeks to extract damages from Ms. Staedter for encouraging people to use a drug database established by Congress to report adverse side effects. May state law impose financial penalties on those who encourage others to report information Congress is trying to collect?

## FACTS[2]

The Complaint conjectures that Defendant Staedter is part of an interstate conspiracy to defame Plaintiff,[3] himself an "influencer" in the bodybuilding industry who "marketed and promoted his business and bodybuilding career" on Instagram and other social-media platforms.[4] Defendant Staedter is a California resident who briefly dated Plaintiff in 2020. Like Plaintiff, "Staedter also has a career and substantial online presence in the fitness and bodybuilding industry."[5]

Although the conspiracy against Plaintiff is vast and mysterious, the Complaint only alleges only one instance in which Defendant Staedter participated in it: by making a statement that "instructed her followers to report Plaintiff's business to the FDA."[6] Because of that statement, Plaintiff has "sustained severe mental distress" and he is now "living in constant fear."[7]

---

[2] For purposes of this motion, Defendant Staedter accepts the Complaint's well-pleaded factual allegations as true.
[3] Complaint, ¶ 22.
[4] Complaint, ¶ 1.
[5] Complaint, ¶ 4.
[6] Complaint, ¶ 26.
[7] Complaint, ¶ 42.

**LEGAL STANDARD**

Troubled by pervasive abuse of the legal system to interfere with the free exercise of First Amendment rights, the California Legislature enacted an anti-SLAPP law to quickly dispose of litigants' meritless efforts to extract silence and settlements from their critics.[8] When a plaintiff shows up, hat in hand, complaining that someone criticized him, California's anti-SLAPP law permits the defendant make a special motion to strike, which permits her to make only a minimal demonstration that she engaged in protected speech before shifting the burden onto the plaintiff to demonstrate that he is likely to prevail on the merits.[9]

The defendant's motion to strike may attack the legal or factual sufficiency of the pleadings. If the motion attacks the complaint's legal sufficiency, the Court must evaluate it using the well-known standard laid out in Fed. R. Civ. P. 12(b)(6); if it attacks the complaint's factual sufficiency, the Court must permit limited discovery and then evaluate the motion "under the same standard as Rule 56 motions for summary judgment."[10]

Because Ms. Staedter's motion challenges only the legal sufficiency of the Complaint, the Court need only apply the Rule 12 standard. It "must accept as true all of the allegations contained in a complaint," but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[11]

---

[8] Cal. Civ. Proc. Code § 425.16.

[9] *Manzari v. Associated Newspapers Ltd.*, 830 F.3d 881, 887 (9th Cir. 2016) ("[T]he moving defendant must make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's constitutional right to free speech. . . . The burden then shifts to the plaintiff, . . . to establish a reasonable probability that it will prevail on its claim in order for that claim to survive dismissal.").

[10] *CoreCivic, Inc. v. Candide Grp., LLC*, No. 20-17285, 2022 U.S. App. LEXIS 24417, at *16 (9th Cir. Aug. 30, 2022).

[11] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**LAW & ARGUMENT**

I. **Because Ohio courts use *depecage*, Ms. Staedter's claim of immunity to defamation liability is governed by California law.**

"Federal courts sitting in diversity must apply the choice-of-law principles of the forum."[12] "Ohio courts tend to evaluate choice of law questions on an issue-by-issue basis … which allows for the application of different states' laws" to different parties, claims, and issues.[13]

For instance, in *Reynolds vs. Hamblin*, NO. 1185, 1983 Ohio App. LEXIS 15939, at *8 (Ct. App. June 8, 1983), an Ohio woman sued her husband for injuries sustained in a car crash during a trip to Kentucky. Though Kentucky law governed the underlying question of whether the husband was negligent, the trial court dismissed the case based on interspousal immunity under Ohio law. The Twelfth District affirmed, noting that courts evaluating choice-of-law questions should no longer ask simply where the injury occurred, but also whether the defendant's home state had an interest "in the advancement of its existing legislative policy" through the application of the defenses it affords its residents in similar cases.[14]

Federal courts routinely invoke this doctrine of *depecage* to give defendants the benefit of their home states' defamation laws.[15] In the leading case on *depecage* in the anti-SLAPP context, *Chi v.*

---

[12] *Troy Stacy Enter. v. Cincinnati Ins. Co.*, No. 21-4008, 2022 U.S. App. LEXIS 15881, at *6 (6th Cir. June 8, 2022) (citing Klaxon)

[13] *Chartis Speciality Ins. Co. v. Lubrizol Corp.*, No. 1:11 CV 369, 2013 U.S. Dist. LEXIS 203520, at *27 (N.D. Ohio Mar. 29, 2013).
*Hoover v. Recreation Equip. Corp.*, 792 F. Supp. 1484, 1492 (N.D. Ohio 1991) ()

[14] *Reynolds vs. Hamblin*, NO. 1185, 1983 Ohio App. LEXIS 15939, at *6 (Ct. App. June 8, 1983).

[15] *Hoover v. Recreation Equip. Corp.*, 792 F. Supp. 1484, 1492 (N.D. Ohio 1991) *See also*, *Croce v. Sanders*, 459 F. Supp. 3d 997 (S.D. Ohio 2020) (applying anti-SLAPP defense under Indiana law to defamation claim under Ohio law); *Osundairo v. Geragos*, 447 F. Supp. 3d 727, 744 (N.D. Ill. 2020) (applying anti-SLAPP defense under California law to defamation claim under Illinois law); *Vangheluwe v. Got News, LLC*, 365 F. Supp. 3d 836, 843 (E.D. Mich. 2019) (applying anti-SLAPP defense under California law to defamation claim under Michigan law); *O'Gara v. Binkley*, 384 F. Supp. 3d 674, 682 (N.D. Tex. 2019) (applying anti-SLAPP defense under Texas law to defamation claim under California law); *Diamond Ranch Acad., Inc. v. Filer*, 117 F. Supp. 3d 1313, 1324 (D. Utah 2015) (applying anti-SLAPP defense under California law to defamation claim under Utah law); *Drexler v. Billet*, No. CV 17-8552-DMG (JCx), 2018 U.S. Dist. LEXIS 98647, at *3 n.4 (C.D. Cal. June 12, 2018) (applying anti-SLAPP defense under California law to contract claim under New York law); *Underground*

*Loyola Univ. Med. Ctr.*, 787 F. Supp. 2d 797 (N.D. Ill. 2011), a doctor sued his Illinois-based former employer for defaming him to a prospective employer in Arizona. Though the Northern District of Illinois held that Arizona law should govern the defamation claim itself, the hospital was still entitled to invoke the immunity it enjoyed at home in Illinois:

> A state has a strong interest in having its own anti-SLAPP law applied to the speech of its own citizens, at least when, as in this case, the speech initiated within the state's borders. Defendants are citizens of Illinois, and their allegedly defamatory speech originated here. Illinois thus has a strong interest in having its own anti-SLAPP statute applied to the issue of whether defendants are immune from liability for defamation.[16]

The same is true here. Whatever state's law the Court applies to the underlying tort claims, Ms. Staedter is entitled to the greater protections of California's anti-SLAPP statute, which—as in *Chi*—protects her from dumping unnecessary money into pointless discovery and provides a streamlined mechanism for recovering her attorney's fees. Also as in *Chi*, Ms. Staedter's home state has a "strong interest in enforcing its anti-SLAPP law to 'encourage continued participation in matters of public significance' and to protect against 'a disturbing increase in lawsuits brought primarily to chill the valid exercise' of constitutionally protected speech."[17] It is likewise undisputed that Ms. Staedter was a citizen of California when she allegedly made defamatory statements[18] and that none of those statements originated anywhere other than California.[19]

---

*Sols., Inc. v. Palermo*, 41 F. Supp. 3d 720, 726 (N.D. Ill. 2014) (applying anti-SLAPP defense under Tennessee law to defamation claim under Illinois law); *Duffy v. Godfread*, No. 13-cv-1569, 2013 U.S. Dist. LEXIS 114580, at *11 (N.D. Ill. Aug. 14, 2013) (applying anti-SLAPP defense under Minnesota law to defamation claim under Illinois law); *Intercon Sols., Inc. v. Basel Action Network*, 969 F. Supp. 2d 1026, 1035 (N.D. Ill. 2013) (applying anti-SLAPP defense under Washington law to defamation claim under Illinois law); *Chi v. Loyola Univ. Med. Ctr.*, 787 F. Supp. 2d 797, 803 (N.D. Ill. 2011) (applying anti-SLAPP defense under Illinois law to defamation claim under Arizona law); *Glob. Relief Found. v. N.Y. Times Co.*, No. 01 C 8821, 2002 U.S. Dist. LEXIS 17081, at *32 (N.D. Ill. Sep. 9, 2002) (applying anti-SLAPP defense under California law to defamation claim under Illinois law).

[16] *Chi v. Loyola Univ. Med. Ctr.*, 787 F. Supp. 2d 797, 803 (N.D. Ill. 2011).

[17] *Sarver v. Chartier*, 813 F.3d 891, 899 (9th Cir. 2016).

[18] Complaint, ¶ 4.

[19] Declaration of Chelsea Staedter, ¶ 2.

California thus has the same "strong interest in having its own anti-SLAPP statute applied" to Ms. Staedter's speech, and the Court should therefore permit Ms. Staedter to invoke California's anti-SLAPP law.

## II. California's anti-SLAPP law applies in federal court.

When state and federal law are in conflict, "federal courts sitting in diversity apply state substantive law and federal procedural law."[20] To determine whether a conflict exists, the Sixth Circuit requires this Court to first ask whether the federal law is so broad that it causes a "direct collision" with the state law, "leaving no room for the operation of that law."[21] If there is no direct collision, the Court must then consider whether declining to enforce the state law would promote "forum shopping" or the "inequitable administration of the laws."[22]

Applying the same standards, the Ninth Circuit has consistently held for more than two decades that California's anti-SLAPP statute applies in federal courts because it can "peacefully co-exist" with the Federal Rules of Civil Procedure rather than causing a "direct collision." In *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963 (9th Cir. 1999), for instance, former employees brought a *qui tam* action alleging a defense contractor had been overbilling the Department of Defense, and the contractor filed counterclaims for breach of fiduciary obligations. The employees invoked California's anti-SLAPP law to dismiss the counterclaims, but the trial court denied their motion, holding that the anti-SLAPP law's special motion to strike and its fee-shifting provisions conflicted with the Federal Rules of Civil Procedure. But the Ninth Circuit reversed, holding that the two bodies of law could peacefully co-exist while serving similar purposes, and that

---

[20] *Sutton v. Mt. High Invs., LLC*, No. 21-1346, 2022 U.S. App. LEXIS 5380, at *9 (6th Cir. Mar. 1, 2022) (citing *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996)).
[21] *Albright v. Christensen*, 24 F.4th 1039, 1044 (6th Cir. 2022)
[22] *Albright v. Christensen*, 24 F.4th 1039, 1045 (6th Cir. 2022),

enforcing the state law would discourage forum shopping and promote the equitable administration of the law:

> Plainly, if the anti-SLAPP provisions are held not to apply in federal court, a litigant interested in bringing meritless SLAPP claims would have a significant incentive to shop for a federal forum. Conversely, a litigant otherwise entitled to the protections of the Anti-SLAPP statute would find considerable disadvantage in a federal proceeding. This outcome appears to run squarely against the "twin aims" of the Erie doctrine.[23]

Because California's anti-SLAPP statute harmonizes with the Federal Rules of Civil Procedure, and because applying it discourages forum shopping while promoting the equitable administration of the law, the Court should permit Ms. Staedter to invoke its protections.

### III. California's anti-SLAPP law applies to Plaintiff's claims against Ms. Staedter because her alleged conduct contributed to discussion of a matter of public concern.

California's anti-SLAPP law is a device to weed out meritless defamation claims before a plaintiff can use exorbitant costs of the discovery and trial to extort a settlement from defendants exercising their First Amendment rights. Under California Code of Civil Procedure § 425.16, a defendant is entitled to have the complaint stricken if its claims arise "from any act of that person in furtherance of the person's right of petition or free speech … in connection with a public issue."[24]

Before granting a special motion to strike, the Court must first determine whether the Complaint premises liability on conduct protected by the anti-SLAPP statute. That inquiry moves in two steps: "first, we ask what public issue or issues the challenged activity implicates, and second, we ask whether the challenged activity contributes to public discussion of any such issue."[25]

---

[23] *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 973 (9th Cir. 1999)
[24] Cal. Civ. Proc. Code § 425.16.
[25] *Geiser v. Kuhns*, No. S262032, 2022 Cal. LEXIS 5120, at *4 (Aug. 29, 2022).

### A. Ms. Staedter's alleged conduct was "in connection with a public issue" because it implicated issues of public health.

"[The] first step is satisfied so long as the challenged speech or conduct, considered in light of its context, may reasonably be understood to implicate a public issue, even if it also implicates a private dispute. Only when an expressive activity, viewed in context, cannot reasonably be understood as implicating a public issue does an anti-SLAPP motion fail."[26] "[V]irtually always, defendants succeed in drawing a line—however tenuous—connecting their speech to an abstract issue of public interest."[27]

The Complaint attributes only one specific statement to Ms. Staedter: an instruction to her Instagram followers to "to report Plaintiff's business to the FDA."[28] Assuming that this alleged conduct—a call for consumers to report a business or product to the FDA—can even be characterized as asserting anything about Plaintiff, comments about food and drug safety fall squarely within the realm of "public issues," as they speak to persistent social problems that have required broad, federal regulation and that consistently generate substantial public interest and news coverage. Federal courts invariably accept speech on such topics as implicating an issues of public concern.[29]

Because Ms. Staedter's alleged conduct addressed matters of food and drug safety, it was in connection with a public issue within the meaning of § 425.16.

---

[26] *Geiser v. Kuhns*, No. S262032, 2022 Cal. LEXIS 5120, at *27 (Aug. 29, 2022).

[27] *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 150 (2019).

[28] Complaint, ¶ 26.

[29] *See, e.g.*, *Exeltis USA Inc. v. First Databank, Inc.*, No. 17-cv-04810-HSG, 2017 U.S. Dist. LEXIS 210482, at *34 (N.D. Cal. Dec. 21, 2017) (holding speech about availability of health supplements under federal law "concerns a topic of widespread, public interest"); *Phx. Trading, Inc. v. Loops LLC*, 732 F.3d 936, 940 (9th Cir. 2013) (affirming holding that statements about lead in toothbrushes "were in furtherance of Loops' free speech rights and in connection with an issue of public concern"); *Metabolife Int'l v. Wornick*, 264 F.3d 832, 854 (9th Cir. 2001) ("There is no dispute that for purposes of § 425.16(b)(1), Wornick and WCVB-TV were speaking 'in connection with a public issue'" when they reported consumers "can die from taking this product.")

### B. Ms. Staedter's alleged conduct contributed to public debate because its context demonstrates it was intended for public consumption.

The second step in determining whether § 425.16 applies to a claim asks "whether the defendant's statements … contributed to public debate on those issues."[30] Again, the Court must consider the full context of the conduct at issue, "including audience, speaker, and purpose."[31] To satisfy this test, courts may rely on evidence that the speech or conduct was directed at "the wider public,"[32] that it "entered the public sphere" or that it was intended to,[33] that "the identity of its speaker … or the audience sought" suggests a public conversation,[34] or that the media covered the conduct or that media coverage was solicited.[35]

The California Supreme Court clarified last month in *Geiser v. Kuhns*, No. S262032, 2022 Cal. LEXIS 5120 (Aug. 29, 2022), that this test should be construed generously, extending protection even if conduct seeks to advance the defendant's interests, even if it addresses only a narrow piece of a broader issue,[36] and even if it is of limited "social utility" or failed to "propel[] the conversation in any particular direction."[37] *Geiser* approvingly discussed the Court of Appeal's treatment of the same issue in *Indus. Waste & Debris Box Serv., Inc. v. Murphy*, 4 Cal. App. 5th 1135, 208 Cal. Rptr. 3d 853 (2016), where a waste-management company sued a competitor's analytics firm over a report accusing it of inflating statistics about how much trash it was diverting to be recycled. Although the report was commercial, although it was likely designed to injure a competitor, and although it

---

[30] *Geiser v. Kuhns*, No. S262032, 2022 Cal. LEXIS 5120, at *23-24 (Aug. 29, 2022).

[31] *Geiser v. Kuhns*, No. S262032, 2022 Cal. LEXIS 5120, at *23-24 (Aug. 29, 2022).

[32] *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 153 (2019)

[33] *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 153 (2019)

[34] *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 154 (2019)

[35] *Geiser v. Kuhns*, No. S262032, 2022 Cal. LEXIS 5120, at *32 (Aug. 29, 2022) ("[W]hen the conduct that gives rise to a lawsuit attracts such media attention, it can be an indicator that such conduct was undertaken 'in connection with' a public issue.").

[36] *Geiser v. Kuhns*, No. S262032, 2022 Cal. LEXIS 5120, at *30-31 (Aug. 29, 2022).

[37] *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 151 (2019).

focused on only a narrow piece of the larger public question of the environmental effects of waste-management practices, it was nonetheless protected, whether because it was "derived … from public reports," or because it discussed "whether and to what degree [Plaintiff was] meeting government standards."[38]

Assuming for purposes of this test that Ms. Staedter's call for reports to the FDA somehow suggested that Plaintiff's products required FDA review, all the conxtextual indicators endorsed by the Ninth Circuit suggest her alleged conduct contributed to discussion of a matter of public concern:

- **Audience:** Ms. Staedter's alleged comment was directed at the wider public because it was published to the Internet.[39]
- **Speaker:** Ms. Steadter is a social-media influencer with a "substantial online presence."[40]
- **Purpose:** Reporting unsafe products to the FDA encourages a transparent investigation into products with the potential to injure the public.
- **Derivation:** Ms. Steadter's comments derived from information that Plaintiff made publicly available when he "marketed and promoted his business and bodybuilding career online via social media."[41]
- **Content:** Ms. Staedter's conduct raised questions about whether and to what degree Plaintiff was in compliance with FDA regulations.

Even if Ms. Staedter's alleged conduct failed to reach any audience, even if no one heeded her alleged call to contact the FDA, and even if the FDA never investigated Plaintiff, its effects are irrelevant under *Industrial Waste* because the context demonstrates that the alleged conduct was intended to move public debate.

---

[38] *Indus. Waste & Debris Box Serv., Inc. v. Murphy*, 4 Cal. App. 5th 1135, 1149 (2016).
[39] Complaint, ¶ 26.
[40] Complaint, ¶ 4.
[41] Complaint, ¶ 1.

Because the context of Ms. Staedter's alleged conduct indicates that she sought to influence the public debate over food and drug safety, it contributed to public debate of a public issue and falls within the protection of § 425.16.

## IV. The Court must strike Plaintiff's claims against Ms. Staedter because he cannot establish any probability of prevailing.

If the Court determines that the Complaint falls within the protections of the anti-SLAPP statute, it must grant the motion to strike "unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."[42] At this stage, "the burden shifts to the plaintiff to demonstrate the merit of the claim."[43] As laid out below, Plaintiff cannot establish any probability of success because the Complaint fails to state a claim on which relief can be granted.

### A. Plaintiff cannot establish any probability of prevailing because he lacks standing to prosecute claims on behalf of his company.

"Article III standing is a jurisdictional requirement that cannot be waived, and such may be brought up at any time in the proceeding."[44] A trial court typically must therefore dismiss any claims brought by one party on behalf of another, even if those parties are closely related. For instance, in *Thomas v. Better Bus. Bureau*, 79 F. App'x 748 (6th Cir. 2003), the owner of a construction company sued to prevent the Better Business Bureau from issuing further reports about his company. The trial court dismissed the claim for lack of standing, and the Sixth Circuit affirmed, holding that the plaintiff had no standing to represent the interests of a distinct party: "Although Thomas may be the sole owner of Thomas Construction, an action to redress injuries by a corporation cannot be maintained by an owner in his own name."[45]

---

[42] Cal. Civ. Proc. Code § 425.16.
[43] *Baral v. Schnitt*, 1 Cal. 5th 376, 384 (2016).
[44] *Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 531 (6th Cir. 2002).
[45] *Thomas v. Better Bus. Bureau*, 79 F. App'x 748, 748 (6th Cir. 2003).

Here, Plaintiff only makes one allegation that Ms. Staedter defamed him, but it actually alleges that she defamed another entity:

> All Defendants additionally published false statements concerning *Plaintiff's business and products*, including that Plaintiff's products were unsafe for public consumption and had dangerous side effects. Defendant Staedter further instructed her followers to report Plaintiff's *business* to the FDA, despite Defendant Staedter selling an identical product herself.[46]

The Complaint makes no allegations that Ms. Staedter said anything about *Plaintiff*, only about "Plaintiff's business." But just as in *Thomas*, Article III standing prohibits Plaintiff from raising his business's claims against Ms. Staedter in federal court, even if he is the business's sole owner.

Because he lacks standing to raise his business's claims against Ms. Staedter, Plaintiff cannot establish a probability of prevailing on those claims.

### B.  Plaintiff cannot establish any probability of prevailing because the Court lacks personal jurisdiction over Ms. Staedter.

"When sitting in diversity, a federal court may exercise personal jurisdiction over an out-of-state defendant only if a court of the forum state could do so."[47] The Ohio Supreme Court has ruled that the Ohio long-arm statute does not extend to the constitutional limits of the Due Process Clause and requires plaintiffs to demonstrate that defendants have established "minimum contacts" with the state so as not to offend "traditional notions of fair play and substantial justice:"[48]

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

---

[46] Complaint, ¶ 26 (emphasis added).
[47] *Blessing v. Chandrasekhar*, 988 F.3d 889, 901 (6th Cir. 2021).
[48] *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000).

None of these requirements are satisfied here. The Complaint admits that Ms. Staedter is a California citizen,[49] and Ms. Staedter's declaration confirms that she already lived there at the time of her alleged statements.[50] Likewise, both the Complaint and the declaration make clear that Ms. Staedter has not purposefully availed herself of the privilege of acting in Ohio. The Complaint contains no allegations that Ms. Staedter ever set foot in Ohio, that she took any action here, that she caused him any injury here, or that she has any other connection to the state substantial enough to justify dragging her 2,200 miles across the country to defend herself here.

Because Ms. Staedter has no connections with Ohio and has not purposefully availed herself of the privilege of acting here, the Court has no jurisdiction over her, and Plaintiff therefore cannot establish a probability of prevailing on any claim against her.

### C. Plaintiff cannot establish any probability of prevailing because he has not adequately pleaded a claim that can survive Ms. Staedter's constitutional defenses.

To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice."[51]

For instance, in *Doe v. Univ. of Dayton*, 766 F. App'x 275 (6th Cir. 2019), one student brought a defamation claim against another for accusing him of sexual assault, alleging that the defendant made "false and non-privileged statements negligently, with knowledge of their falsity, or with reckless disregard for their truth or falsity." The trial court dismissed the claim for failing to adequately allege actual malice, and the Sixth Circuit affirmed, holding that the courts were "not bound to accept as true a legal conclusion couched as a factual allegation."

---

[49] Complaint, ¶ 4.
[50] Declaration of Chelsea Staedter, ¶ 2.
[51] *Edelstein v. Gmoser*, No. 21-3292, 2022 U.S. App. LEXIS 24390, at *5 (6th Cir. Aug. 29, 2022) (cleaned up).

Here, the Complaint only adequately alleges one actual statement on which it premises Ms. Staedter's liability: "Defendant Staedter further instructed her followers to report Plaintiff's business to the FDA." This allegation is insufficient to support overcome the protection of the First Amendment for three independent reasons:

**First**, an opinion about what someone *should* do cannot be defamatory. "It is the function of the court to determine whether an expression of opinion is capable of bearing a defamatory meaning."[52] But as Plaintiff will admit, Ms. Staedter said only that *if* customers were experiencing "concerning side effects," they should report those side effects to the FDA. This statement is as true of Plaintiff's business's products as it is of aspirin or Claritin or any other drug or health supplement, and it in no way suggests that anyone already has experienced concerning side effects. And even if it did, implying that someone, somewhere, had an adverse reaction to a product is not defamatory; any medicine can and will cause side effects, and there is nothing defamatory about saying those side effects should be reported and studied. And even if Ms. Staedter's opinion that consumers should report to the FDA could be proven false, Plaintiff does not allege that it actually was false, i.e., that Ms. Staedter's followers should not have reported his business to the FDA.

**Second**, the Complaint does not adequately allege that Ms. Staedter expressed her opinion with actual malice. Instead, Plaintiff merely plopped the elements of actual malice into the Complaint, alleging that "Defendants published the false and defamatory statements about Plaintiff with actual malice, as Defendants knew, or showed reckless disregard for the truth, that the statements were false."[53] But this is merely "a legal conclusion couched as a factual allegation"— the same sloppy pleading the Sixth Circuit rejected in *Doe*. This Court should be no more willing to accept it.

---

[52] *Falls v. Sporting News Pub. Co.*, 834 F.2d 611, 615-16 (6th Cir. 1987)
[53] Complaint, ¶ 37.

**Third**, to the extent that state law imposes defamation liability for encouraging consumers to report adverse side effects to the FDA, it is preempted by federal law. A state law is preempted "where under the circumstances of a particular case, the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."[54] For instance, in *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001), the plaintiffs brought fraud claims against medical-device manufacturers, alleging they misrepresented the nature of products up for FDA approval. The Third Circuit held that the claims were not preempted by the Food, Drug and Cosmetic Act because there was a presumption against finding implied preemption. But the Supreme Court reversed, holding that the states could not enforce laws that would upset the "delicate balance" Congress had struck in encouraging the FDA to both collect information and police fraud perpetrated against it:

> As a practical matter, complying with the FDA's detailed regulatory regime in the shadow of 50 States' tort regimes will dramatically increase the burdens facing potential applicants — burdens not contemplated by Congress in enacting the FDCA and the MDA. Would-be applicants may be discouraged from seeking § 510(k) approval of devices with potentially beneficial off-label uses for fear that such use might expose the manufacturer or its associates (such as petitioner) to unpredictable civil liability.[55]

The same is true here. The FDA operates MedWatch, a database that "supports FDA laws and regulations governing adverse event reports and product experience reports for FDA-regulated products."[56] "To carry out its responsibilities, the Agency needs to be informed when an adverse event, product problem, error with use of a human medical product, or evidence of therapeutic failure is suspected or identified in clinical use."[57] But the FDA cannot carry out those responsibilities if drug manufacturers can sue their consumers for merely *suggesting* that people use

---

[54] *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000) (cleaned up).
[55] *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 350 (2001).
[56] 86 FR 62184.
[57] 86 FR 62184.

Page 15 of 17

MedWatch exactly as it was intended. Left to guess what state's laws might apply to such a claim and what those laws might say about suggesting a report, consumers like Ms. Staedter will simply elect not to report adverse events at all, leaving MedWatch with gaping holes in its data. And Mr. Leal's allegation that Ms. Staedter's opinion was false does nothing to change the analysis, as Congress has already established penalties for abusing the system, making "falsification of a report of a serious adverse event" a criminal offense.[58] Just as in *Buckman*, then, Congress has already balanced its interests in collecting reports about medical products and protecting against false reports; Plaintiff may not upset that balance by seeking to extract tens of thousands of dollars from Ms. Steadter for advancing Congress's goals.

Because Plaintiff failed to adequately allege that Ms. Staedter made a false statement about him, because he failed to allege that she made such a statement with actual malice, and because his claims against Ms. Staedter are preempted by federal law, Plaintiff cannot establish a probability of prevailing on those claims. Likewise unable to establish standing or personal jurisdiction, Plaintiff cannot establish any probability of prevailing on his claims against Ms. Staedter, so the Court should strike the claims against her.

## CONCLUSION

Plaintiff's Complaint seeks to haul a California resident across the country in a futile attempt to punish herself for exercising her First Amendment right to speak about drug safety. Fortunately, California has already enacted laws to protect its citizens from such abuses, and the federal courts uniformly agree that Californians may invoke those laws—even in federal court. Because Ms. Staedter was exercising her First Amendment rights, because she has no business litigating in Ohio, and because Plaintiff has no chance of prevailing on the merits, the Court should strike Plaintiff's claims against her and enter an award of full attorney's fees.

---

[58] 21 U.S.C.S. § 331.

Respectfully submitted,

*/s/Brian D. Bardwell*
Speech Law LLC
Brian D. Bardwell (0098423)
1265 West Sixth Street, Suite 400
Cleveland, OH 44113-1326
216-912-2195 Phone/Fax
brian.bardwell@speech.law
*Attorney for Defendant Chelsea Staedter*

## CERTIFICATE OF SERVICE

I certify that on September 21, 2022, this document was served on opposing counsel as provided by Civ. R. 5(B)(2)(f).

*/s/Brian D. Bardwell*
Brian D. Bardwell (0098423)
*Attorney for Defendant Chelsea Staedter*