IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **MICHAEL LEAL**<br>    *Plaintiff,*<br>v.<br>**FELICIA BEDEL**, *et al.*<br>    *Defendants.* | Case No.: 1:22-cv-00150-MRB-KLL<br><br>Judge Michael R. Barrett<br><br>Magistrate Judge Karen L. Litkovitz |
| **DEFENDANT STAEDTER'S REPLY**<br>**IN SUPPORT OF HER SPECIAL MOTION TO STRIKE** ||

  Defendant Chelsea Staedter respectfully submits this reply in support of her motion to strike Plaintiff's claims against her. As laid out below, she is entitled to strike those claims and recover attorney's fees under California's anti-SLAPP statute, Cal. Code of Civ. P. § 425.16.

### ISSUES PRESENTED

1. The parties disagree as to whether Ms. Staedter's defenses are governed by California or Colorado law. Both states offer identical anti-SLAPP defenses to quickly weed out meritless defamation claims. Must the Court resolve the parties' choice-of-law dispute?

2. To prevent forum shopping and equal-protection problems, the *Erie* doctrine requires trial courts to apply state substantive law in diversity cases. California and Colorado's anti-SLAPP laws provide substantive protections for the exercise of free speech, and taking them away from Ms. Staedter would encourage forum shopping and the inequitable administration of the law. Should the Court strip Ms. Staedter of those protections?

3. Section 425.16 permits a special motion to strike at any time the Court "deems proper." Allowing Ms. Staedter's motion now offers an opportunity to quickly narrow the parties and issues in this case, and Plaintiff does not allege that allowing the motion now would prejudice him in any way. Should the Court accept Ms. Staedter's invitation to attempt an early resolution?

4. In response to a special motion to strike, the plaintiff bears the burden of demonstrating a probability of prevailing on his claims. Plaintiff does not dispute that the Court lacks jurisdiction over Ms. Staedter, and he premises her liability on statements that are either opinions or substantially true. Does Plaintiff have any probability of prevailing on those claims?

## LAW & ARGUMENT

**I.  Because California and Colorado offer the same anti-SLAPP protections, the Court should grant Ms. Staedter's motion regardless of how it resolves the parties' choice-of-law dispute.**

**A.  Because Ohio uses *depecage*, the Court need not accept Plaintiff's false dichotomy; it should apply *both* Colorado's defamation law *and* California's defamation defenses.**

"Ohio courts tend to evaluate choice of law questions on an issue-by-issue basis … which allows for the application of different states' laws" to different parties, claims, and issues.[1] As this Court acknowledged in Plaintiff's own lead case, although Ohio courts use it "with caution" *depecage* "has been applied in anti-SLAPP cases."[2] Plaintiff concedes that "Ohio has adopted the Restatement of the Law 2d, Conflict of Laws … in its entirety to govern choice-of-law analysis,"[3] and the Restatement encourages depecage:

> The courts have long recognized that they are not bound to decide all issues under the local law of a single state. … Thus, subject only to rare exceptions, the local law of the state where conduct and injury occurred will be applied to determine whether the actor satisfied minimum standards of acceptable conduct. … On the other hand, the local law of the state where the parties are domiciled, rather than the local law of the state of conduct and injury, may be applied to determine whether one party is immune from tort liability.[4]

That is just the situation the Court faces here: Plaintiff seeks to impose his home state's tort law, while Ms. Staedter seeks to invoke her home state's immunities to that tort. Nonetheless, Plaintiff argues that the Court is categorically prohibited from applying *depecage* here because Ohio courts treat "the location of the injury" as the default test for choosing which

---

[1] *Chartis Speciality Ins. Co. v. Lubrizol Corp.*, No. 1:11 CV 369, 2013 U.S. Dist. LEXIS 203520, at *27 (N.D. Ohio Mar. 29, 2013).
[2] *Croce v. Sanders*, 459 F. Supp. 3d 997, 1028 (S.D. Ohio 2020).
[3] Pl. Opp. to Mot. to Strike, 9.
[4] Restatement of the Law 2d, Conflict of Laws, § 145, cmt. d.

state's law to apply.[5] The Court must therefore apply Colorado law, he argues, because "[t]here is no credible argument to be made that the location of the injury here is California."[6]

Ms. Staedter concedes that this is true—to a point. If Colorado is where Plaintiff suffered whatever injury he alleges, *depecage* says the Court should apply Colorado law to determine whether Ms. Staedter engaged in tortious conduct and whether Plaintiff suffered a compensable injury. But *depecage also* calls for the Court to take another analytical step—which Plaintiff fails to acknowledge—and ask which state has the most significant interest in the questions of whether to protect speech uttered in California, by Californians, through a California-based platform, about the spread of infectious disease in California and the sale of dangerous drugs in California.

If Colorado is the state with the most significant interest in remedying Plaintiff's alleged injuries in Colorado and California is the state with the most significant interest in protecting Californians speaking in California about matters of public concern within California, the Court should rely on *depecage* to invoke Colorado's substantive defamation law to protect Plaintiff's interests and California's defamation defenses to protect Ms. Staedter's interests.

> **B. Because Colorado has an anti-SLAPP law functionally identical to California's, Ms. Staedter is entitled to anti-SLAPP protection even if the Court applies Colorado law.**

Like California, Colorado has erected robust defenses to protect residents who exercise their constitutional rights to free speech from those would chill their speech "through abuse of the judicial process."[7] Colo. Rev. Stat. § 13-20-1101 establishes essentially the same mechanisms as Cal. Code Civ. Proc. § 425.16 to protect these rights, including a tool for early

---

[5] Pl. Opp. to Mot. to Strike, 9.
[6] Pl. Opp. to Mot. to Strike, 10.
[7] Colo. Rev. Stat. § 13-20-1101.

disposition of defamation cases and a fee-shifting provision for successful motions. Colorado's law "is nearly identical to California's anti-SLAPP statute."[8] Indeed, § 13-20-1101 was "copied nearly verbatim from California's anti-SLAPP law … Therefore, the Court … primarily looks to California law for persuasive authority as to the interpretation of Colorado's statute."[9]

Ms. Staedter is therefore equally entitled to early disposition of the claims against her, regardless of whether the Court applies California or Colorado law.

### II. Because enforcing § 425.16's substantive protections would discourage forum shopping and the inequitable administration of the law, *Erie* requires the Court to permit Ms. Staedter to invoke it in federal court.

The *Erie* doctrine holds that "[e]xcept in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State."[10] As every federal court knows, though, that rule is easier to recite than it is to apply. But regardless of what test is currently *en vogue*—outcome determination,[11] direct collision,[12] balancing of state and federal interests,[13] etc.—the Supreme Court's consistent command is that trial courts should apply *Erie* to achieve its twin aims: to prevent forum shopping and the to prevent inequitable administration of the law.

---

[8] *Shin v. ICON Found.*, No. 20-cv-07363, 2021 U.S. Dist. LEXIS 90045, at *1-2 (N.D. Cal. May 11, 2021).

[9] *Stevens v. Mulay*, No. 19-cv-01675, 2021 U.S. Dist. LEXIS 58605, at *11 (D. Colo. Feb. 16, 2021).

[10] *Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 822 (1938).

[11] *Guaranty Trust Co. v. York*, 326 U.S. 99, 109 (1945) ("[T]he outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court.").

[12] *Hanna v. Plumer*, 380 U.S. 460, 472 (1965).

[13] *Byrd v. Blue Ridge Rural Elec. Coop.*, 356 U.S. 525, 538, 78 S. Ct. 893, 901 (1958) ("[T]he inquiry here is whether the federal policy … should yield to the state rule in the interest of furthering the objective that the litigation should not come out one way in the federal court and another way in the state court.").

For instance, in *Palmer v. Hoffman*, 318 U.S. 109, 63 S. Ct. 477 (1943), an estate brought state-law negligence claims against a railroad in federal court. The railroad sought a jury instruction that would have forced the estate to prove the absence of contributory negligence as an affirmative defense, but the trial court held that the burden belonged to the railroad. The Supreme Court affirmed, holding that state common law required that outcome, but it went out of its way to reject the estate's argument that the railroad bore that burden simply by virtue of Rule 8's inclusion of contributory negligence in its list of affirmative defenses:

> We do not agree. Rule 8 (c) covers only the manner of pleading. The question of the burden of establishing contributory negligence is a question of local law which federal courts in diversity of citizenship cases must apply.[14]

Under *Palmer*, Ms. Staedter's claim to the protection of local law has even greater force. She seeks the protection of a local law codifying Plaintiff's burden in establishing the merits of his case, while Plaintiff objects that Rule 12 already establishes "his burden to survive dismissal."[15] But Rule 12 does no such thing. It tells Ms. Staedter "when and how" to present her defenses, but it is silent as to how the Court should review her motion, allocate the burden of persuasion, and allocate the costs of litigating the motion. To quote *Palmer*, then, Rule 12(C) "covers only the manner of pleading," while "[t]he question of the burden of establishing [the failure to state a claim] is a question of local law which federal courts in diversity of citizenship cases must apply."

This outcome should come as no surprise, as it is the only one that also advances *Erie*'s twin aims. At its heart, *Erie* resolves the conflict-of-law question not by asking whether the law is labeled "substantive" or "procedural," nor by picking apart its substance or purpose, nor by

---

[14] *Palmer v. Hoffman*, 318 U.S. 109, 117, 63 S. Ct. 477, 482 (1943) (internal citations omitted).
[15] Pl. Opp. to Mot. to Strike, 14.

enforcing any "mechanically" applied test; instead, "its application must be guided by 'the twin aims of the *Erie* rule'"[16] which ask whether enforcing a state law in federal court will discourage forum-shopping or promote the equitable administration of justice.

The answer to these questions becomes clear when remembering that § 425.16 was California's response to "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech," and that it embodied the Legislature's finding that "it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process."[17]

### A. Because permitting Plaintiff to dodge § 425.16 encourages forum shopping, the Court should advance *Erie*'s twin aims by allowing Ms. Staedter's motion to strike.

Accepting the California Legislature's premise—that an unacceptably large share of defamation suits are brought by plaintiffs seeking not to vindicate any real injury but to raise the price of fair criticism—it is beyond obvious where a plaintiff will go when looking to drive up the cost of litigation. Presented with a choice between (a) a federal court that will let a plaintiff drag the case all the way to summary judgment before even considering whether anything he has said is even true; and (b) a state court that will impose financial sanctions unless the plaintiff can demonstrate at least "a probability that he or she will prevail,"[18] what attorney could possibly counsel his client to file anywhere other than federal court?

---

[16] *Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 428, 116 S. Ct. 2211, 2220 (1996) (quoting *Hanna* v. *Plumer*, 380 U.S. 460, 468 (1965)).
[17] Cal. Civ. Proc. Code § 425.16(a).
[18] Cal. Civ. Proc. Code § 425.16(b)(1).

One need only look to this case for an illustration. Plaintiff alleges that he is currently a resident of New York,[19] which has an anti-SLAPP law.[20] But he says that "at all times relevant" to the case, he was a resident of Colorado,[21] which also has an anti-SLAPP law.[22] He raises claims against Ms. Staedter, a resident of California,[23] which also has an anti-SLAPP law.[24] He alleges that she was part of a conspiracy orchestrated and incited by a resident of Georgia,[25] which also has an anti-SLAPP law.[26] He alleges that conspiracy was joined by Defendant Cammie Leal, a resident of Arizona,[27] which also has an anti-SLAPP law.[28]

Given all those choices, Plaintiff curiously chose to litigate not in the state where he lived all times relevant, not in the state where he was injured, and not in the state where he lives now. Instead, he has chosen the Southern District of Ohio, which has no jurisdiction over Ms. Staedter and no connection to this case other than his second ex-wife's decision to move here after they separated. It is of course *possible* that he relished the opportunity to enjoy Gold Star and Graeter's during lunch breaks at trial,[29] but it is worth considering that Plaintiff knew Ohio was the only state that had some connection to the case but does not have an anti-SLAPP law.

---

[19] Complaint, ¶ 1.
[20] N.Y. C.L.S. Civ R § 70-a.
[21] Pl. Opp. to Mot. to Strike, 10.
[22] C.R.S. 13-20-1101.
[23] Complaint, ¶ 4.
[24] Cal. Civ. Proc. Code § 425.16.
[25] Complaint, ¶ 5.
[26] O.C.G.A. § 9-11-11.1.
[27] Complaint, ¶ 3.
[28] A.R.S. § 12-751.
[29] Counsel for Ms. Staedter concedes that this would be rational.

**B. Because permitting Plaintiff to dodge § 425.16 encourages inequitable administration of the law, the Court should advance *Erie*'s twin aims by allowing Ms. Staedter's motion to strike.**

Clogging the federal dockets with meritless claims alleging that plaintiffs have been teased on the Internet would not be the only problem caused by stripping Ms. Staedter of the protections of § 425.16. Doing so would also work the same sort of Equal Protection problems that informed the Supreme Court's decision in *Erie*.

In that case, a pedestrian brought state-law negligence claims against a railroad operator, which argued it was entitled to dismissal because the plaintiff was considered a trespasser under Pennsylvania law. The trial court permitted the case to go to a jury without considering Erie's argument, holding that because the case was brought to federal court, it was governed by federal common law, rendering the state-law defense irrelevant. But the Supreme Court reversed, holding that there was no federal general common law. The Court noted the mischief that had arisen from allowing such a system: rather than keeping plaintiffs on even footing in the courts of other states, diversity jurisdiction was instead giving them an unfair advantage by allowing them to choose between competing bodies of law, and leaving otherwise similarly situated defendants with different rights, depending on where the plaintiff chose to file suit.

> It made rights enjoyed under the unwritten "general law" vary according to whether enforcement was sought in the state or in the federal court; and the privilege of selecting the court in which the right should be determined was conferred upon the non-citizen. Thus, the doctrine rendered impossible equal protection of the law. In attempting to promote uniformity of law throughout the United States, the doctrine had prevented uniformity in the administration of the law of the State.[30]

Nearly a century later, Plaintiff seeks to restore this imbalance, allowing him to skirt the free-speech protections California and most other states have enacted merely by invoking

---

[30] *Erie R.R. v. Tompkins*, 304 U.S. 64, 74-75 (1938).

diversity jurisdiction. But this would leave some defendants with the protections of anti-SLAPP laws and others without, depending solely on which court is hearing the claim. Accepting Plaintiff's argument would therefore create exactly the equal-protection problem the Supreme Court has been warning about since *Erie*.[31]

The Court should not reward Plaintiff's forum shopping, nor should it leave Ms. Staedter without the defenses she would enjoy had Plaintiff brought this case in a court with jurisdiction over her. Because § 425.16 discourages forum shopping and avoids the inequitable administration of the law, permitting Ms. Staedter to invoke its protections will advance *Erie*'s twin aims.

### III. Because she was not required to file it at any specific time, the court should accept Ms. Staedter's motion to strike as timely.

Under § 425.16(f), a special motion to strike "may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper."[32] Because these motions provide a device "for weeding out, at an early stage, meritless claims arising from protected activity," courts typically permit them despite the expiration of the

---

[31] *See, e.g.*, *Guar. Tr. Co. v. York*, 326 U.S. 99, 112, 65 S. Ct. 1464, 1471 (1945) ("Congress afforded out-of-State litigants another tribunal, not another body of law."); *Ragan v. Merchs. Transfer & Warehouse Co.*, 337 U.S. 530, 532, 69 S. Ct. 1233, 1234 (1949) ("[T]he rights enjoyed under local law should not vary because enforcement of those rights was sought in the federal court rather than in the state court."); *Hanna v. Plumer*, 380 U.S. 460, 468, 85 S. Ct. 1136, 1142 (1965) ("The 'outcome-determination' test therefore cannot be read without reference to the twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws."); *Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 428, 116 S. Ct. 2211, 2220 (1996) ("Where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court.").

[32] Cal. Civ. Proc. Code § 425.16(f).

statutory time if the case otherwise "did not proceed in any material respect after Plaintiff's initial filing."[33]

But the statute's constraints on these motions do not apply in federal court because they "directly collide with the more permissive timeline Rule 56 provides for the filing of a motion for summary judgment."[34] Both Plaintiff and Ms. Staedter have filed their pleadings, so this motion to strike operates as a motion for judgment on the pleadings under Rule 12(C), which may be filed any time "[a]fter the pleadings are closed—but early enough not to delay trial." Section 425.16's timing limits are therefore more restrictive than Rule 12's and may not be enforced in federal court.

Even if the Court were to apply those limits, it should still accept and decide the special motion to strike, for three reasons:

**First**, the Court should accept Ms. Staedter's motion to strike because there was good cause for the delay. Ms. Staedter was served on June 15 but was initially delayed in retaining counsel until June 27 while she and her co-defendants resolved potential conflict issues. From there, the motion was further delayed due to the complex nature of the case; Ms. Staedter took care to avoid burdening the Court with a meritless motion and therefore undertook extensive research into the antecedent questions that might have stood in her way, addressing not only the five-way choice-of-law problem presented by Plaintiff's complaint, but also the *Erie* doctrine issues that could have prevented her from invoking the protection of § 425.16 in the first place.[35]

---

[33] *Keezio Grp., LLC v. Summer Infant (USA), Inc.*, No. CV 22-3429, 2022 U.S. Dist. LEXIS 185812, at *6 (C.D. Cal. Oct. 11, 2022) (accepting anti-SLAPP motion filed 106 days after service of complaint).

[34] *Sarver v. Chartier*, 813 F.3d 891, 900 (9th Cir. 2016).

[35] Ms. Staedter can further represent that although she sought answers from Plaintiff's counsel as to the states of Plaintiff's residence at various points up to the filing of his complaint, she was further delayed in resolving the attendant jurisdictional and choice-of-law issues because they never answered those questions.

**Second**, the Court should accept Ms. Staedter's motion to strike because the case had not proceeded in any material respect by the time Ms. Staedter filed her motion. Between Ms. Staedter's acceptance of service and her filing of the motion to strike, there has been no activity on the docket that would not have occurred if the motion had been filed earlier. Indeed, courts have often permitted anti-SLAPP motions filed in circumstances where far more time had passed or where there had been far more substantive proceedings.[36]

**Third**, the Court should accept Ms. Staedter's motion to strike because Plaintiff has not alleged—let alone demonstrated—that he suffered *any* prejudice whatsoever by the delayed filing.

Because § 425.16's timing requirements do not apply in federal court and because they would permit it even if they did, the Court should accept and decide Ms. Staedter's special motion to strike.

IV. **Because Plaintiff does not dispute multiple grounds for finding his claims against Ms. Staedter meritless, the Court should find that Plaintiff has not demonstrated any probability that he will prevail on the merits.**

Because both Ohio law and *Erie* permit Ms. Staedter to invoke the protections of § 425.16, the only question left for the Court is whether "there is a probability that the plaintiff will prevail on the claim." Although "the burden shifts to the plaintiff to demonstrate the merit of the claim,"[37] it is plain that the claims against Ms. Staedter fail, regardless of who bears the

---

[36] *Ibarra v. ChickiP, LLC*, No. B236444, 2013 Cal. App. Unpub. LEXIS 1520, at *12 (Feb. 28, 2013) (affirming acceptance of anti-SLAPP motion filed 384 days after service of complaint); *Hoang v. Tran*, 60 Cal. App. 5th 513, 274 Cal. Rptr. 3d 567 (2021) (affirming acceptance of anti-SLAPP motion filed more than a year after the complaint); *S. Sutter, LLC v. LJ Sutter Partners, L.P.*, 193 Cal. App. 4th 634, 123 Cal. Rptr. 3d 301 (2011) (affirming acceptance of anti-SLAPP motion filed 127 days after service of complaint); *Neufinck v. Fernandez*, No. B307277, 2022 Cal. App. Unpub. LEXIS 951, at *20 (Feb. 15, 2022) (affirming acceptance of anti-SLAPP motion filed within three months of complaint).
[37] *Baral v. Schnitt*, 1 Cal. 5th 376, 384 (2016).

burden of making that demonstration. As laid out in Ms. Staedter's motion, Plaintiff's claims against her fail for multiple, independent reasons:

1. First, to the extent they are premised on Ms. Staedter's alleged statements about his business or products, Plaintiff lacks standing to raise those claims.[38] Plaintiff does not dispute that he cannot litigate claims on behalf of his company.

2. Second, the Court lacks personal jurisdiction over her because Ms. Staedter is a California citizen with no connections to Ohio.[39] Plaintiff does not dispute that the Court lacks personal jurisdiction.

3. Third, because Ms. Staedter's conditional advice about reporting adverse side effects to the FDA is an opinion, is not defamatory, and is not even alleged to be false, it cannot be the subject of a defamation claim.[40] Plaintiff does not dispute that this statement was an opinion and does not allege that it carries any false implications of fact. To the extent he argues that this statement is false because it implies that his company's products were unsafe, Plaintiff has come forward with no evidence to satisfy his burden of demonstrating that implication's falsity.

4. Fourth, Plaintiff fails to state a claim on which relief can be granted because he did not adequately plead actual malice. Plaintiff does not dispute that he was required to plead actual malice or that he failed to do so.

5. Fifth, to the extent they are premised on Ms. Staedter's statements encouraging customers of Plaintiff's business to report adverse side effects to the FDA, his state-law claims are pre-empted by federal law. Plaintiff does not dispute that his claims are pre-empted.

Plaintiff argues that he has nonetheless adequately pled his defamation claims because Ms. Staedter has also falsely stated "that Plaintiff gave her a sexually transmitted disease."[41] But

---

[38] Special Mot. to Strike, 11–12.
[39] Special Mot. to Strike, 12–13.
[40] Special Mot. to Strike, 13–14.
[41] Pl. Opp. to Mot. to Strike, 13.

that statement cannot support liability, either—most importantly, because Plaintiff never actually pleads it. While Paragraph 29 of the Complaint alleges that this false statement existed at some time, it does not allege that Ms. Staedter made it; indeed, Paragraph 19 admits that Defendant Staedter said just the opposite.

Even if Plaintiff had alleged the opposite of what he has actually alleged, the statement would not be defamatory, because mere falsity does not make a statement actionable; instead, the First Amendment requires Plaintiff to further prove that the "gist" or "sting" of the statement is not substantially true.[42] The Court is of course not in a position at this stage to determine whether Plaintiff gave Ms. Staedter chlamydia or vice versa, but thanks to the "sting" rule, it will never need to. Restatement § 572, the source of *per se* liability for false accusations of a "loathsome and communicable disease," makes clear that the sting of such an accusation is the suggestion that people ought to avoid the plaintiff:

> [T]here may possibly be other diseases that would fall within the intent and purpose of this Section. For example, the statement that a person is a typhoid carrier has an obvious tendency to exclude him from society, to prevent his employment in many fields and to cause him to be avoided by a good many people for a long period of time, and therefore might be sufficiently serious to be actionable without proof of damage.[43]

But if the gist of loathsome-disease claims is that they isolate plaintiffs by excluding them from society and prevent employment, the statement that Plaintiff infected Ms. Staedter has no more sting than what Plaintiff says is true, i.e., that Ms. Staedter infected Plaintiff. Perhaps people are unwilling to enter into a sexual relationship or otherwise associate with Plaintiff because he has chlamydia, but it strains logic to suggest that they would feel differently depending on who infected whom.

---

[42] *List v. Driehaus*, 779 F.3d 628, 633 (6th Cir. 2015).
[43] *Restat 2d of Torts*, § 572.

Because the sting of the chlamydia statement is that Plaintiff has chlamydia, and because Plaintiff admits that he does, in fact, have chlamydia, the statement cannot support defamation liability. And because neither the FDA statement nor the chlamydia statement can support a defamation claim, and because neither would give the Court jurisdiction over Ms. Staedter, Plaintiff cannot demonstrate a probability that he will prevail on his claims.

## Conclusion

The California Legislature enacted § 425.16 for a reason, and this case is it. Plaintiff nonsensically attempts to drag a Californian halfway across the country to defend against allegations that she encouraged drug users to report adverse side effects to the FDA—not because her statements were untrue, but because Plaintiff doesn't want the public to know the truth. Fortunately, both Ohio and federal courts permit Ms. Staedter to invoke the anti-SLAPP protections available in her home state. Those protections ask very little of Plaintiff—merely that he demonstrate a likelihood of success on the merits. Yet Plaintiff does not dispute that the Court lacks jurisdiction to hear his claims, and he cannot explain how the sting of any of Ms. Staedter's alleged statements actually injured him.

Because he has not demonstrated any probability that he will prevail, the Court should strike Plaintiff's claims against Ms. Staedter.

Respectfully submitted,

*/s/Brian D. Bardwell*
Speech Law LLC
Brian D. Bardwell (0098423)
1265 West Sixth Street, Suite 400
Cleveland, OH 44113-1326
216-912-2195 Phone/Fax
brian.bardwell@speech.law
*Attorney for Defendant Chelsea Staedter*

## CERTIFICATE OF SERVICE

I certify that on October 26, 2022, this document was served on opposing counsel as provided by Civ. R. 5(B)(2)(f).

                                                  */s/Brian D. Bardwell*
                                                  Brian D. Bardwell (0098423)
                                                  *Attorney for Defendant Chelsea Staedter*